IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF Apple Iphone in mirror case, CURRENTLY LOCATED AT **FBI Evidence 225 N Humphreys Blvd. Memphis, Tennessee 38120** | Case No. 21-SW-253 |

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, Charles R Irvin, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am a Special Agent with the Federal Bureau of Investigation, and have been since March 05, 2017.  Prior to working for the Federal Bureau of Investigation, I was a police officer for the Richmond, Indiana Police Department from April of 2012 to February of 2017. During my time with the Richmond, Indiana Police Department, I attended a training on Gangs, Drugs and Gang Violence. During my career, I have participated in numerous violent crime investigations. During these investigations, I have conducted and/or participated in the following; physical surveillance, victim and suspect interviews, the execution of search warrants, debriefing and tasking of informants, and reviews of surveillance videos. In addition, through my training, education, experience, I have become familiar with the manner in which bank robberies,

CRI

business robberies and other violent crimes are typically conducted. I have also had training and experience in fugitive investigations to include using cellular phones to locate and arrest fugitives, conducted interviews with fugitives to learn their use cell phones in order to find modes of travel, lodging and other necessities. Lastly, I am an investigative or law enforcement officer of the United States within meaning of section 2510(7) Title 18, United States Code, and am empowered by law to conduct investigations and make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

3. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

4. The property to be searched is a Apple Iphone in mirror case, hereinafter the "Device." The Device is currently located at **FBI Evidence 225 N Humphrey's Blvd. Memphis, Tennessee 38120**.

5. The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

6. On June 14, 2021, the Federal Bureau of Investigation and members of the Two Rivers Violent Fugitive Task Force of the United States Marshals Service for the Western District of Tennessee were notified by the Bureau of Prisons of an inmate, Cecil Haggins was not present for during head count. Bureau of Prisons conduct a search of the prison grounds, and it was determined Haggins had left the facility.

CR

7. The US Marshals conducted interviews with the employee's of Bureau of Prison (BOP), at the Camp located at 6696 Navy Road, Millington. Through the interviews, US Marshals, identified an Annette West as an individual who placed funds on Haggins commissary account on May 12, 2021.

8. US Marshals interviewed Haggins BOP Case Manager, Annie Ezell on June 15, 2021 about Haggins. Ezell advised Haggins had called her BOP issued cell phone (901-305-0250) from a blocked number. Ezell told US Marshals Haggins was crying and saying he did not mean to escape.

9. On June 16, 2021 Annette West called Ezell and stated she did not know what was going on and she was celebrating her birthday. West further stated she would try to get a location for Haggins. A confidential source for the US Marshals placed Haggins in Manchester, Tennessee.

10. US Marshals investigators checked the area of America's Best Value Inn 890 Interstate Dr Manchester, Tennessee. Investigators located a silver Honda Accord registered to Annette West.

11. US Marshals spoke with the hotel manager and located the name Kathleen Sharpe on the guest roster.

12. Annette West's middle name is Kathleen and through training, experience and information from other Officers, Agents and Deputy US Marshals, it is common for fugitives to use variations of their name in attempts to avoid detection.

CR

13. Investigators knocked and announced at room 224. The door to room 224 was opened by a white female identified as Annette West. Haggins immediately made himself known to investigators and complied with commands.

14. West was read her Miranda Warning and declined to provide a statement. West did sign a consent to search her vehicle, and the hotel room.

15. During the search of the vehicle and the hotel room, the cellular phones were seized. Also located during the search was a receipt from a retail store of Ross, in Millington, Tennessee dated June 13, 2021.

16. Cellular phones are prohibited items in Bureau of Prison facilities for inmates. While conducting the investigation into Haggins, Bureau of Prison Special Investigative Services Officer Damian Smith informed SA Irvin of a Facebook Profile he had previously found for Haggins. Officer Smith further stated the profile picture of the Facebook Profile depicts Haggins in the weight room area of the Camp in which Haggins escaped from.

17. Training, experience and information obtained from Deputy US Marshals, subjects who escape from prison, often use cellular phones to communicate with other parties for means of escape. Fugitives will use cellular phones to obtain means of transportation, change of clothing, and lodging to further their escape and avoid detection from law enforcement.

18. Based on the above information, Agents believe there are communications between Haggins, West and others on the cellular phones seized from Haggins and West that will further show the planning and execution of Haggins escape.

CR2

19. The Device is currently in the lawful possession of the Federal Bureau of Investigation. It came into the Federal Bureau of Investigation's possession in the following way: The cellular phone was seized by the US Marshal's at the time of arrest of Cecil Haggins and Annette West. West signed a consent to search of the hotel room and her vehicle. Deputy US Marshal Trayon Murray then turned the cellular phone over to Special Agent Charles Irvin with the Federal Bureau of Investigation. Therefore, while the Federal Bureau of Investigation might already have all necessary authority to examine the Device, I seek this additional warrant out of an abundance of caution to be certain that an examination of the Device will comply with the Fourth Amendment and other applicable laws.

20. The Device is currently in storage at **FBI Evidence 225 N Humphrey's Blvd. Memphis, Tennessee 38120**. In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the **Federal Bureau of Investigation.**

## TECHNICAL TERMS

21. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or

CRI

traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video,

CRD

or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing

7

computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

g. Pager: A pager is a handheld wireless electronic device used to contact an individual through an alert, or a numeric or text message sent over a telecommunications network. Some pagers enable the user to send, as well as receive, text messages.

CRE

h. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

i. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

22. Based on my training, experience, and research, I know that the Device has capabilities that allow it to serve as **a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA.** In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

CRI

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

23.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

24.     *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

CRP

  d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

  e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

25. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

26. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

CRP

## CONCLUSION

27. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

*[signature]*

Charles R. Irvin
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me
on July 14, 2021:

*[signature]*

HON. ANNIE T. CHRISTOFF
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

The property to be searched is a Apple Iphone in mirror case, hereinafter the "Device." The Device is currently located at **FBI Evidence 225 N Humphreys Blvd. Memphis, Tennessee 38120**.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

## **ATTACHMENT B**

1. All records on the Device described in Attachment A that relate to violations of Title 18 **U.S.C. 1072** and involve **Annette West** since **June 13, 2021**, including:

   a. Communications pertaining to escape, travel, funding or co-conspirators in the plot to escape prison;

   b. any information related transportation, lodging, or purchases of items such as clothing, to change his appearance.

   c. any information recording **Annette West**'s schedule or travel from **June 13, 2021 till time of his arrest on June 16, 2021**;

   d. all bank records, checks, credit card bills, account information, and other financial records.

2. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted

by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.